## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**DORA DOBY,**

        Plaintiff,

    v.

**SISTERS OF ST. MARY OF OREGON
MINISTRIES CORPORATION,** a domestic
non-profit corporation; **SISTERS OF ST.
MARY OF OREGON LITTLE FLOWER
DEVELOPMENT CENTER,** a domestic non-
profit corporation abn **VALLEY CATHOLIC
EARLY LEARNING SCHOOL** and abn
**VALLEY CATHOLIC SCHOOL** and abn
**LITTLE FLOWER DEVELOPMENT
CENTER,**

        Defendants.

Case No. 3:13-cv-0977-ST

**OPINION AND ORDER**

**STEWART, Magistrate Judge:**

## INTRODUCTION

    Plaintiff, Dora Doby ("Doby"), is a former preschool teacher at Valley Catholic Early

Learning School ("VCELS").  Doby filed this action against VCELS and Sisters of St. Mary of

Oregon ("SSMO") Little Flower Development Center, an alternate business name for VCELS,[1]

---

[1] The caption of the First Amended Complaint lists two other alternative business names for SSMO Little Flower Development Center:  Valley Catholic School and Little Flower Development Center.

1 – OPINION AND ORDER

and against SSMO Ministries Corporation, the parent company of SSMO Little Flower Development Center.  First Amended Complaint (docket #25), ¶ 10.

Doby's First Amended Complaint alleges the following eight claims: (1) two federal claims under the ADA, 42 USC § 12112 (First Claim), and the Family Medical Leave Act ("FMLA"), 29 USC § 2615(a)(2), (b) (Sixth Claim); (2) four claims for violation of state discrimination laws under ORS 659A.030(f), 659A.112, 659A.183, and 659A.199 (Second, Third, Fourth, and Fifth Claims); and (3) two common law claims for intentional infliction of emotional distress (IIED) and wrongful discharge (Seventh and Eighth Claims).  At oral argument, Doby withdrew her IIED claim (Eighth Claim), and part of her discrimination claims (First and Second Claims) premised on being "regarded as" having a disability.  All remaining claims derive from alleged discrimination and retaliation based on Doby's disability of Obsessive Compulsive Disorder ("OCD") and her activities as a whistleblower, including interference with her use of approved FMLA leave and eventual termination.

This court has jurisdiction over the federal claims under 28 USC § 1331 and supplemental jurisdiction over the remaining claims under 28 USC § 1367(a).  Doby has satisfied all administrative prerequisites by filing a complaint with the Oregon Bureau of Labor and Industries, co-filing with the Equal Employment Opportunity Commission ("EEOC"), and obtaining a right-to-sue notice from each agency.  First Amended Complaint, ¶ 7; Leachman Decl. (docket #61), Exs. 3-6.[2]  All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

Defendants filed a Motion for Summary Judgment (docket #57), seeking to dismiss all claims.  After the hearing on the motion, this court entered an Order granting the motion as to the

---

[2] The parties have submitted documents with various attachments.  Citations to declarations and depositions are identified by the last name of the declarant or deponent and citations are to the paragraph(s) of the declaration or the page(s) of the deposition transcript.

Fifth and Sixth Claims (Oregon Family Leave Act ("OFLA") and FMLA Retaliation) and part of

the First and Second Claims (Discrimination Based on Disability) alleging a failure to make

reasonable accommodations, deferring the motion for further briefing as to the Seventh Claim

(Wrongful Discharge), and otherwise denying the motion (docket #81).  This Opinion explains

the basis for that ruling and also grants summary judgment to defendants against the Seventh

Claim.

### **STANDARDS**

Summary judgment may be granted if "no genuine issue" exists regarding any material

fact and "the moving party is entitled to judgment as a matter of law."  FRCP 56(c).  The moving

party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317,

323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the

pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing

FRCP 56(e).  The court must "not weigh the evidence or determine the truth of the matter, but

only determine[] whether there is a genuine issue for trial."  *Balint v. Carson City, Nev.*, 180 F3d

1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is

'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material

fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir 1989)

(citation omitted).  The substantive law governing a claim or defense determines whether a fact

is material.  *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000) (citation omitted).

The court must view the inferences drawn from the facts "in the light most favorable to the non-

moving party."  *Bravo v. City of Santa Maria*, 665 F3d 1076, 1083 (9th Cir 2011) (citations

omitted).

///

///

### UNDISPUTED FACTS

Doby was a preschool teacher at VCELS (also referred to as Little Flower) from 2008 until her termination on May 23, 2012. First Amended Complaint, ¶¶ 19, 65. Doby suffers from OCD, and defendants had granted her FMLA leave to accommodate those days on which her OCD rituals made her late for work or were so severe she stayed home. *Id*, ¶¶ 36-37. In late 2011, Doby began reporting harassment by an anonymous coworker to Joyce Howard ("Howard"), Little Flower's Human Resources Director. *Id*, ¶ 39(c); Rohny Decl. (docket #65), Exs. 19, 25. The accused harasser was Cleta Woods ("Woods"). First Amended Complaint, ¶ 46.

On May 3, 2012, Woods told Doby that one of her students was a member of the Church of Jesus Christ of Latter-day Saints ("Mormon"), an association that triggered Doby's OCD anxiety. *Id*, ¶ 47. Moments before, this student had hugged Doby. *Id*. Doby finished her shift, but later emailed Howard that the incident had triggered her OCD and identified Woods as her harasser. Howard Decl. (docket #59), Ex. 1, p. 1; Rohny Decl., Ex. 20. Doby wrote two more emails to Howard that evening, expressing the extent of her OCD fears. Howard Decl., Ex. 1. Howard forwarded the first email to Robert Weber ("Weber"), President of Little Flower, informing him of the school's duty to respond to Doby's accusations of harassment. Rohny Decl., Ex. 20. Defendants placed Doby on paid administrative leave for the period starting May 4, 2012, until her termination. Weber Decl. (docket #58), ¶ 11.

In a meeting on May 10, 2012, Weber and Howard told Doby that she was required to undergo a fitness-for-duty evaluation with a psychologist chosen by defendants, Dr. Donna Wicher, to determine if she could safely perform her job. Howard Decl., ¶ 15. After learning about the location of Dr. Wicher's office, Doby asked to move the evaluation to a location that did not trigger her OCD and to a different doctor of her choice. *Id*, Exs. 3-4. Defendants

rescheduled the appointment with Dr. Wicher to May 16 and also made other offers for appointments at other locations, to allow a support person to attend the evaluation, to change the timing of the appointment, and to pay for a cab to and from the appointment. *Id*, Exs. 5, 8. On May 14, Doby again asked defendants that she be allowed to choose the doctor to conduct the evaluation and, if necessary, pay for it. *Id*, Ex. 10. On May 15, Doby's attorney informed defendants the next day that Doby would not be attending the rescheduled evaluation. *Id*, Ex. 11. Doby provided alternative names which defendants declined, citing their right to choose the evaluator. Weber Decl., Ex. 10. On May 23 Doby refused to attend the third appointment with Dr. Wicher rescheduled for May 26 and requested an evaluation with Wildwood Psychiatric Resource Center. *Id*, p. 10. Based on her failure to cooperate with the fitness-for-duty evaluation proceed by attending the scheduled appointment with Dr. Wicher, defendants fired her. *Id*, ¶ 20 & Ex. 12.

## DISCUSSION

## I.    Evidentiary Objections

Defendants raise evidentiary objections based on improper lay testimony, inadmissible hearsay, lack of authentication, timeliness, relevancy, and conclusory language. For the following reasons, all objections are denied.

First, the content, not the form, determines the admissibility of evidence at the summary judgment stage. FRCP 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Fraser v. Goodale*, 342 F3d 1032, 1036 (9th Cir 2003); *see also Block v. City of L.A.*, 253 F3d 410, 418-19 (9th Cir 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."). Doby has presented testimony that can be authenticated and

admitted as non-hearsay or under a hearsay exception at trial.  Also, Doby has corrected all authentication issues regarding depositions with the filing of her Sur-Reply and accompanying declarations (dockets ##77-79).

Second, the court has discretion to disregard untimely opposition materials and finds that a one-day delay did not prejudice the defendants or upset court procedures.

Third, "relevance objections are redundant . . . and statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment.  Objections on any of these grounds are simply superfluous in this context."  *Burch v. Regents of Univ. of Cal.*, 433 F Supp 2d 1110, 1119 (ED Cal 2006).

Thus, for the purposes of this motion, the court will consider all evidence to the extent it is capable of being admitted in the proper form at trial.

## II.    Discrimination on the Basis of Disability (First and Second Claims)

The First and Second Claims allege that defendants discriminated against Doby in violation of the ADA and ORS 659A.112 law by:  (1) denying her reasonable accommodations for her disability; and (2) firing her when she refused to undergo a fitness-for-duty evaluation as a condition of her employment.  Defendants are entitled to summary judgment on the first ground alleging that she was unlawfully denied reasonably accommodations.

### A.    Threshold Requirements

The ADA prohibits discrimination by specific entities, including private employers, against individuals with disabilities and, in some instances, against individuals perceived to be disabled.  Specifically, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and

privileges of employment."  42 USC § 12112.  To seek protection under the ADA, Doby must

show both that she is disabled and a "qualified individual."  *Snead v. Metro. Prop. & Cas. Ins.*

*Co.*, 237 F3d 1080, 1087 (9th Cir 2001) (citation omitted).  In federal court, the standard for

establishing a disability discrimination claim under Oregon law is identical to that used in the

ADA.  *Snead*, 237 F3d at 1087, citing ORS 659.449 (Oregon's discrimination laws "shall be

construed to the extent possible in a manner that is consistent with any similar provision of the

federal Americans with Disabilities Act of 1990, as amended").

      1.        **"Disabled"**

     Defendants first argue that Doby is not disabled under the ADA or Oregon law.  The

ADA defines an individual with a disability as someone who:  (1) has a physical or mental

impairment that substantially limits one or more of the individual's major life activities; (2) has a

record of the impairment; or (3) is regarded as having an impairment.  42 USC §12102(2)(A).

Only Doby's disability claims under the "actual disability" prong remain.

     The "actual disability" prong requires:  (1) a physical or mental impairment; (2) that

substantially limits; (3) one or more of the individual's major life activities.  An impairment is a

disability within the meaning of this section if it substantially limits the ability of an individual to

perform a major life activity as compared to most people in the general population."  29 CFR

§ 1630.2 (j)(1)(ii).  In other words, the individual is "[s]ignificantly restricted as to the condition,

manner, or duration under which an individual can perform a major life activity as compared to

the condition, manner, or duration under which the average person in the general population can

perform that same major life activity."  29 CFR § 1630.2 (j).  The EEOC Regulations list OCD

as an example of a *per se* disability — an impairment that will "virtually always be found to

impose a substantial limitation on a major life activity."  29 CFR 1630.2(j)(3)(ii)-(iii).  The

definition of a major life activity includes, in part, both "[c]aring for oneself" and "performing manual tasks" which OCD impacts. 29 CFR § 1630.2(i)(1)(i).

Defendants argue that Doby is not substantially limited in any major life activity because her OCD only slightly delayed performing chores, namely laundry and washing dishes, all of which she eventually completed. The Ninth Circuit has rejected the argument that an individual cannot be disabled if she can still accomplish the major life activity. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F3d 1128, 1135 (9th Cir 2001), quoting *Bragdon v. Abbott*, 524 US 624, 641 (1998) (the ADA "addresses substantial limitations on major life activities, not utter inabilities."); *see also* 29 CFR § 1630.2 (j)(1)(ii) ("An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.").

In *Humphrey*, OCD hindered simple tasks of self-care. "The testimony of Humphrey and Dr. Jacisin, her mental health provider, reflects that it took Humphrey significantly more time than the average person to accomplish the basic tasks of washing and dressing." *Humphrey*, 239 F3d at 1134-35. "[T]he process of washing and brushing her hair along could take several hours, and she at times would prepare for work from eight o'clock in the morning until five or six o'clock in the evening." *Id* at 1135. Similarly, Doby claims that her OCD rituals hinder her ability to care for herself and perform chores. Showering involves "[p]ouring the shampoo out of the bottle [and] . . . counting how many droplets land[ed] on [her] head. If [she] bump[s] the door on the way out, [she] might turn the water on or rinse off one more time." Doby Depo., p. 54. Preparing meals can be equally difficult: "I didn't really eat dinner last night because it was just too much trouble until about nine; Then I realized that was not going to work out for sleeping. . . . I did [have dinner]. Very way too late." *Id*, p. 56. She could not even use the staff bathroom at work because it was "contaminated;" instead, she drove home during lunch to use

the bathroom.  Rohny Decl., Ex. 19, p. 2.  Moreover, like Humphrey, Doby's OCD often made

her late to work.  *See Humphrey*, 439 F3d at 1129; Doby Depo., pp. 74-75; Rohny Decl., Ex. 10,

p. 5.  Thus, Doby has submitted sufficient evidence to create a genuine issue of material fact

whether her mental impairment of OCD substantially limits a major life activity.

### 2.    **"Qualified Individual"**

Next, defendants argue that as of May 3, 2012, Doby no longer was able to perform the

essential function of her job to satisfy the definition of a "qualified individual" under the ADA.

The term "qualified individual" means an individual who, "with or without reasonable

accommodation, can perform the essential functions" of her job.  42 USC § 12111.

Doby's job description includes an essential responsibility to promote the "health,

welfare, and safety of the children."  Weber Decl., Ex. 1.  Defendants have submitted no

evidence that Doby was unable to perform this function.  To the contrary, despite her OCT, the

evidence, including her actions on May 3, 2012, immediately after discovering a Mormon child

in her care, supports her flawless ability to perform the functions of the job.  She even continued

playing with the child after learning that the child was "contaminated."  Weber Decl., Ex. 2.

Defendants assert that Doby could not ensure safety of the children in the future by

assuming that there was no reasonable accommodation to remove the "contamination" from the

whole school.  However, Doby had no opportunity to demonstrate she could perform the

essential functions of her job after May 3 because she did not return to teaching.  Doby submits

that had defendants discussed reasonable accommodations with her, they would have discovered

that transferring her to the preschool side of the school, as she requested on May 11 (Rohny

Decl., Ex. 31, p. 2), would have allowed her to continue performing the essential functions of the

job.  Because defendants instead assumed from the language of her emails that no reasonable

accommodation would ensure Doby's ability to protect her students' welfare, a genuine dispute of fact exists as to whether Doby is "qualified" under the ADA.

### B.    **Failure to Accommodate**

Doby alleges that defendants violated the ADA and Oregon law by failing to accommodate her requests to choose which provider would conduct her fitness-for-duty evaluation and to return to work only in the preschool wing of the school away from her OCD triggers.

The ADA definition of discrimination includes "not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.  42 USC § 12112(b)(5)(A).  The ADA delineates only three scenarios in which a duty of reasonable accommodation is owed:  (1) in the job application process; (2) in the work environment; and (3) in the provision of benefits and privileges of employment.  29 CFR 1630.2(o)(1)(i)-(iii).  In essence, the ADA places a duty on the employer to remove barriers that impede the ability of qualified individuals with disabilities *to perform their jobs*.

Doby has failed to show that defendants had a duty to accommodate her in the ADA fitness-for-duty process.  The employee bears the initial burden of showing that "the suggested accommodation would, more probably than not, have resulted in his ability to perform the *essential function of his job*."  *Buckingham v. United States*, 998 F2d 735, 742 (9th Cir 1993) (emphasis added).  Defendants contend that they were entitled to an independent evaluation paid for by them and from a medical provider of their choice.  Doby has presented no evidence or legal authority that it was her right to choose the medical provider or even that her suggested accommodation was reasonable.  Doby requested an evaluator other than Dr. Wicher due to the

proximity of Dr. Wicher's office to a Mormon church.  Weber Decl., ¶ 20 & Ex. 11.  However, defendants offered Doby an appointment with Dr. Wicher in another location and have submitted evidence that the provider selected by Doby worked the same distance as Dr. Wicher from a Mormon church.  Weber Decl., ¶ 18 & Ex. 11.  Even assuming that Doby's request for a different provider in a different location so as not to trigger her OCD, she has presented no evidence that her suggested accommodation would have resulted in her ability to perform the essential functions of her job.  Since no evaluation was ever performed, it is unknown what the outcome might have been.

Likewise, Doby has failed to show that the ADA required defendants to discuss potential accommodations for her return to school before they received the results of the fitness-for-duty evaluation.  Until defendants knew whether Doby's OCD could be accommodated, evaluating her requests was futile.  And, again, Doby has presented no evidence that her requested accommodation would have resulted in her ability to perform her job.  To the contrary, her May 3 emails indicated that after the incident, she considered the entire school contaminated.  If the fitness-for-duty evaluation did reveal Doby's inability to ensure the safety of her students, she fails to explain why quarantining her position to one wing of the school would result in her ability to perform her job.

Accordingly, defendants are entitled to summary judgment against the First and Second Claims to the extent they are premised on defendants' affirmative duty to provide these two requested accommodations during the fitness-for-duty evaluation process.

### C.    <u>Retaliation</u>

The remainder of Doby's discrimination claim is based on a theory of retaliation.  As a result, the burden-shifting rules of *McDonnell Douglas Corp. v. Green*, 411 US 792 (1973), govern.  *Brown v. City of Tucson*, 336 F3d 1181, 1186-87 (9th Cir 2003) (adopting the burden-

shifting analysis in the ADA complex).  Under *McDonnell Douglas*, a plaintiff must first

establish a *prima facie* case of retaliation.  *Id* at 802.  An employee must show that:  (1) he or she

engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a

causal link between the two.  *Pardi v. Kaiser Found. Hosps.*, 389 F3d 840, 849 (9th Cir 2004).  If

the plaintiff proves the *prima facie* elements, the burden of production, but not persuasion, then

shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged

action.  *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F3d 1115, 1123-24 (9th Cir 2000),

citing *McDonnell Douglas*, 411 US at 802.  If the employer does so, the plaintiff must show that

the articulated reason is pretextual either directly by persuading the court that a discriminatory

reason more likely motivated the employer or indirectly by showing that the employer's

proffered explanation is unworthy of credence."  *Id* at 1124, quoting *Texas Dep't of Cmty.*

*Affairs v. Burdine*, 450 US 248, 256 (1981).

### 1.   *Prima Facie* **Case**

Although, as explained above, defendants did not violate the ADA by failing to grant

Doby's requests for accommodations, she engaged in protected activity when she made those

requests.  Even if an employer had no duty to accommodate, the employee's good faith request

for an accommodation may satisfy the first prong of the *prima facie* case for retaliation.  *Coons*

*v. Sec'y of U.S. Dep't of Treasury*, 383 F3d 879, 887 (9th Cir 2004), citing *Heisler v. Metro.*

*Council*, 339 F3d 622, 630 (8th Cir 2003) ("the ADA prohibits an employer from retaliating

against an employee who seeks an accommodation in good faith, even if it is subsequently

determined that the employee is not disabled under the Act").  Doby was engaged in a protected

activity when she asked defendants to allow her to choose the medical provider to conduct the

fitness-for-duty evaluation.

///

### 2.    **Defendants' Nondiscriminatory Reason**

Defendants have submitted evidence that Weber terminated Doby for the non-discriminatory reason that she refused to attend the fitness-for-duty evaluation that they were legally entitled to require.[3]  Weber Decl., ¶¶ 12-19.

The ADA permits a fitness-for-duty evaluation if it "is shown to be job-related and consistent with business necessity."  42 USC § 12112(d)(4)(A).  Generally, a disability-related inquiry or medical examination of an employee may be "job-related and consistent with business necessity" when an employer, "has a reasonable belief, based on objective evidence, that:  (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat due to a medical condition."  EEOC, ENFORCEMENT GUIDANCE ON DISABILITY-RELATED INQUIRIES & MEDICAL EXAMINATIONS UNDER THE ADA 7 (July 2000).

The Ninth Circuit had concluded that "when health problems have had a substantial and injurious impact on an employee's job performance, the employer can require the employee to undergo a physical examination designed to determine his or her ability to work, even if the examination might disclose whether the employee is disabled or the extent of any disability."  *Yin v. State of Cal.*, 95 F3d 864, 868 (9th Cir 1996) (plaintiff had missed an inordinate number of days at work).  In addition, this examination may be required:

> even before an employee's work performance declines if the employer is faced with "significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job. An employee's behavior cannot be merely annoying or inefficient to justify an examination; rather, there must be genuine reason to doubt whether that employee can perform job-related functions."  . . .

---

[3] Defendants may assert as an affirmative defense that the employee posed a direct threat in the workplace, creating a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation."  42 USC § 12111(3).  Defendants have not plead this defense and conceded at the hearing that they will not argue the direct threat defense at trial.

> We agree with these courts that prophylactic psychological examinations can sometimes satisfy the business necessity standard, particularly when the employer is engaged in dangerous work. However, we must be keen to guard against the potential for employer abuse of such exams. Section 12112(d)(4)(A) prohibits employers from using medical exams as a pretext to harass employees.

*Brownfield v. City of Yakima*, 612 F3d 1140, 1146 (9th Cir 2010).

"As the 'reasonable person' language suggests, this test is objective. The employer bears the burden of demonstrating business necessity." *Id* (citations omitted). While the employee is not required to obtain an objective, medical opinion before requiring a medical examination, such evidence can bolster the argument of business necessity. *See Sullivan v. River Valley Sch. Dist.*, 197 F3d 804, 812 (6th Cir 1999) ("Though we need not decide today whether advice from an outside health professional is always necessary, we note that the district's obtaining advice that further examination was needed to determine Sullivan's fitness to work buttresses the district's claim.").

The cases cited by defendants, *Brownfield* and those cited therein,[4] are easily distinguishable. The employer in *Brownfield* satisfied the business necessity standard based on the employee police officer's repeated volatile conduct:

> He swore at a superior after abruptly leaving a meeting despite a direct order to the contrary; he engaged in a loud argument with a coworker and became extremely angry when he learned the incident was being investigated; he reported that his legs began shaking and he felt himself losing control during a traffic stop; his wife called police to report a domestic altercation with Brownfield; and he made several comments to a coworker such as "It doesn't matter how this ends."

*Brownfield*, 612 F3d at 1146.

---

[4] *Brownfield* cited two district court cases, which condoned medical examinations of school employees: *Miller v. Champaign Cmty. Unit Sch. Dist. No. 4*, 983 F Supp 1201 (CD Ill 1997) (school employee had an altercation with a teacher, announced that he would place a "booby trap" in his office) and *Mickens v. Polk Cnty. Sch. Bd.*, 430 F Supp2d 1265 (MD Fla 2006) *aff'd,* 195 F App'x 928 (11th Cir 2006) (school employee had a public argument with another employee in front of students and two confrontations with superiors, one during which he called the dean of students "a fat bitch"). *Brownfield* adopted standards from a Sixth Circuit case, *Sullivan v. River Valley Sch. Dist.*, 197 F3d 804, 811 (6th Cir 1999), involving a school employee who had threatened board members and disclosed confidential student records.

The Ninth Circuit admitted that its analysis of the legitimacy of the employer's decision was "heavily colored by the nature of Brownfield's employment.  Police officers are likely to encounter extremely stressful and dangerous situations during the course of their work."  *Id* at 1146-47.  In contrast, Doby was not engaged in extremely stressful or dangerous work.

The only issue is whether Doby's May 3 emails would cause a reasonable person to believe that her ability to perform the essential functions of her job was not impaired by her May 3 OCD attack.  Defendants argue that Doby's May 3 emails lead to only one reasonable conclusion, namely that she might hurt herself or someone at work, including the Mormon child in her care.  Doby testified that she could understand how someone might think she was crazy (Doby Depo., pp. 281-83), and Weber was concerned after reading her emails that "she might pose a risk of harm to herself or the students."  Weber Decl., ¶ 9.  However, Howard, who had been exposed to Doby's similar emails in the past, treated the May 3 email merely as a report of harassment.  She forwarded the first email to Weber with the message:

> Not sure she meant to say so, but it looks like we now know that Cleta [Woods] is behind this harassment — which is based on the fact that Dora has a disability, and that (a) makes it illegal and (b) means we have to "take immediate and appropriate action" to do something about it.

Rohny Decl., Ex. 20.

Neither Howard's message nor Weber's reply ("What was the comment?") mention any concern about Doby's fitness.  Thus, a genuine issue of fact exists whether the fitness-for-duty evaluation was job-related and consistent with a business necessity.

### 3.    **Pretext**

Even if defendants had a job-related business necessity to require the fitness-for-duty evaluation, Doby has presented circumstantial evidence of pretext to create a factual issue .  First, Doby points to prior instances in which she shared with Howard the intensity of her OCD

anxiety in the same exaggerated and emotionally-charged language as she used on May 3, 2012, without being suspected of being unfit for her job.  Rohny Decl., Ex. 1, p. 2 & Ex. 30, p. 3 & Ex. 33; Howard Decl., Ex. 4, p. 1.  Second, Doby offers evidence that defendants sought a "comprehensive mental health assessment" as part of her fitness-for-duty evaluation, and that Howard had encouraged Doby to seek treatment in the past.  Rohny Decl., Exs. 22, 32.  Third, in response to Doby's past complaints about her principal, Trish Roussel ("Roussel"), Weber commented in an email to Howard that he felt the school administrators were

> treating Doby with kid gloves because she is "protected."  [He] wouldn't stand for this behavior from one of [his] school employees if [he] was the Principal and yet [he] consistently [was] advising [Roussel] to "tread lightly" in these situations.  If [someone] came to [him] with a complaint about an employee of this nature (gossiping with other employees in a manner that undermines the authority of their school administrator) [he] would suggest sitting that person down and informing them that this was not acceptable behavior and that if it happened again, serious consequences would follow including possible termination.

Rohny Decl., Ex. 14, p. 1.

Thus, defendants are not entitled to summary judgment on the Doby's remaining disability claims.

**III.    Whistleblower Claims (Third and Fourth Claims)**

The Third and Fourth Claims allege that defendants unlawfully retaliated against Doby for whistleblowing under both ORS 659A.030 and ORS 659A.199.  Under ORS 659A.030, it is unlawful for "any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice . . ."  Under ORS 659A.199(1), it is "an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee . . .  for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation."  To prove a violation of ORS 659A.199(1), Doby must show that

she engaged in a protected activity which caused her to suffer an adverse employment decision. *Neighorn v. Quest Health Care et al*, 870 F Supp2d 1069, 1101 (D Or 2012).

It is undisputed that Doby reported harassment first by an anonymous coworker and then by Woods.  It is also undisputed that Doby had a history of reporting to Howard and Weber what she believed to be unlawful activity.  She told Weber about Roussel changing employers' timesheets to conceal the denial of work breaks.  Rohny Decl., Ex. 14; Doby Depo., p. 239.  She also reported to Howard an incident when teachers locked a child outside in the rain without a coat (Doby Depo., p. 225) and the school's failure to conduct fire drills (*id*) or meet state-mandated student/teacher classroom ratios (*id* at pp. 241-42).  As under her ADA retaliation claim, the question of whether Doby's protected activity of reporting perceived unlawful conduct motivated defendants to terminate her again presents a genuine dispute based on the circumstantial evidence of pretext.

## IV.    **FMLA/OFLA Claims (Fifth and Sixth Claims)**

OFLA prohibits an employer from denying family leave to which an employee is entitled and also from retaliating or discriminating against an employee who has inquired about, submitted a request for, or invoked any provision of OFLA.  ORS 659A.183.[5]  FMLA is worded somewhat differently and recognizes two types of claims:  (1) interference claims, in which an employer burdens or outright denies FMLA rights to an employee, 29 USC § 2615(a)(1); and (2) retaliation claims, in which an employer discharges an employee for opposing any practice made unlawful under the FMLA, 29 USC § 2615(a)(2).[6]  The same standards apply to the state

---

[5] ORS 659A.183 provides as follows:
It is an unlawful practice for a covered employer to:
(1) Deny family leave to which an eligible employee is entitled under ORS 659A.150 to 659A.186; or
(2)  Retaliate or in any way discriminate against an individual with respect to hire or tenure or any other term or condition of employment because the individual has inquired about the provisions of ORS 659A.150 to 659A.186, submitted a request for family leave or invoked any provision of ORS 659A.150 to 659A.186.

[6] 29 USC § 2615(a) provides as follows:

and federal claims.  *See* ORS 659A.186 ("ORS 659A.150 to 659A.186 shall be construed to the extent possible in a manner that is consistent with any similar provisions of [FMLA]"); *Sanders v. City of Newport*, 657 F3d 772, 783 (9th Cir 2011) ("Oregon courts have looked to federal law when interpreting OFLA.").

Some confusion is created by the FMLA claim in the First Amended Complaint which alleges a violation under 29 USC § 2615(a)(2), but not § 2615(a)(1).  In the Ninth Circuit, "§ 2615(a)(2) applies only to employees who *oppose* employer practices made unlawful by FMLA, whereas, § 2615(a)(1) applies to employees who simply take FMLA leave and as a consequence are subjected to unlawful actions by the employer."  *Xin Liu v. Amway Corp.*, 347 F3d 1125, 1133 n7 (9th Cir 2003), citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F3d 1112, 1124 (9th Cir 2001).  Construing the allegations and evidence in the light most favorable to Doby, she appears to claim that defendants violated both OFLA and FMLA in the following ways:  (1) by denying her request on May 3, 2012, for OFLA/FMLA leave to recover from her OCD attack in violation of ORS 659A.183(1) and 29 USC § 2615(a)(1); (2) by denying her right under OFLA/FMLA to obtain a certification to return to work in violation of ORS 659A.183(2) and 29 USC § 2615(a)(1); and (3) by discharging her in retaliation for opposing these OFLA/FMLA violations in violation of ORS 659A.183(2) and 29 USC § 1615(a)(2), and taking OFLA/FMLA leave in violation of ORS 659A.183(2) and 29 USC § 2615(a)(1).

## A.    <u>Interference Claims</u>

To the extent that her OFLA/FMLA claims are premised on a denial of requested leave on May 3, 2012, they fail for lack of evidence.  Although somewhat vague, Doby's

---

(a) Interference with rights
    (1) Exercise of rights
    It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
    (2) Discrimination
    It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

communications with Howard in the morning of May 4, 2012, could reasonably be construed as a request to be allowed to take OFLA/FMLA leave (Doby Decl. (docket #69), ¶ 8), to which defendants never responded.  Although Doby was not granted unpaid OFLA/FMLA leave, she was placed on paid administrative leave.  As a result, she was allowed to take time off from work to recover from her OCD attack without losing pay or benefits.  Accordingly, she suffered no damages as a result of defendants' denial of OFLA/FMLA leave.  Absent any damages, this claim fails.

Similarly, to the extent that her OFLA/FMLA claims are premised on the denial of her right to obtain a certification to return to work, they fail for lack of evidence.  If an employee is taking OFLA/FMLA leave, then an employer may require the employee to undergo a "fitness-for-duty certification" before reinstating the employee.  *See* 29 CFR § 825.13.  In comparison to the ADA fitness-for-duty evaluation, the FMLA certification is more employee-friendly.  It is issued by the employee's own healthcare provider, and the employer may not require a second or third opinion.  29 CFR § 825.312(a)-(b).  Based on the undisputed evidence, defendants never denied or interfered with Doby's right to obtain her own OFLA/FMLA certification and, in fact, advised her of that option.  Howard Decl., Ex. 6 ("though it is certainly your option to get an additional assessment on your own").  However, Doby never attempted to obtain this certification.  Instead, she asked defendants to "accommodate" her OCD by selecting a provider other than Dr. Wicher.

At best, the evidence supports a misperception by Doby that defendants' requested fitness-for-duty examination under the ADA was the same as an OFLA/FMLA "fitness-for-duty certification."  It is not.  The OFLA/FMLA certification is a separate and distinct verification and does not supplant the ADA provisions.  "If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a

serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA."  29 CFR § 825.216(c).  In other words, even if an employee who is disabled under the ADA is also entitled to FMLA leave, the employer may require her to undergo a fitness-for-duty examination as long as it is job-related and consistent with business necessity.  *See* 29 CFR § 825.702(e).

Given the relationship between the FMLA and the ADA, even if Doby had requested and been granted OFLA/FMLA leave and obtained a OFLA/FMLA certification to return to work, defendants still had every right to require that she undergo an ADA evaluation before reinstating her.  Thus, Doby's FMLA interference claim, at best, duplicates her ADA claim for improperly requiring and administering the fitness-for-duty evaluation.  If defendants prevail on the ADA claim, then they also prevail on the OFLA/FMLA claims.  On the other hand, if a jury finds that the fitness-for-duty evaluation required by defendants under the ADA was not job-related or consistent with business necessity, then Doby will prevail on her ADA claim, rendering moot any additional remedy under the OFLA and FMLA based on the same conduct.

### B.    Retaliation Claims

To establish a claim under 29 USC § 2615(a)(1) for retaliation, the plaintiff "need only prove by a preponderance of evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her."  *Bachelder*, 259 F3d at 1125.  There is no evidence that Doby's taking of OFLA/FMLA leave was a negative factor in her termination.  To the contrary, Howard had granted Doby OFLA/FMLA leave in situations similar to the May 3, 2012 incident, and Doby has submitted no evidence that she was taking or would take more leave than desirable.

That leaves only Doby's potential OFLA/FMLA claim premised on a retaliatory discharge for opposing perceived OFLA/FMLA violations.  However, there is no evidence that

Doby opposed any such violations.  She merely requested OFLA/FMLA leave, even though she

was already on paid administrative leave, and requested a different medical provider in a

different location for the fitness-for-duty examination.  Although Doby appears to contend that

she was discharged for resisting defendant's fitness-for-duty examination with Dr. Wicher, her

resistance was not to any OFLA/FMLA violation.  Instead, it was resistance to the ADA fitness-

for-duty examination.  Although not alleged, Doby conceivably could argue that defendants

terminated her before she could obtain her OFLA/FMLA return-to-work certification.  However,

as discussed above, that certification, regardless of when obtained, does not moot defendants'

right to obtain the ADA fitness-for-duty examination.  In other words, no causal connection

exists between her alleged protected activity under the OFLA or FMLA and defendants' decision

to terminate her.

Thus, defendants are entitled to summary judgment against both the FMLA and OFLA

claims.

## V.    <u>Wrongful Discharge (Seventh Claim)</u>

The Seventh Claim alleges that defendants wrongfully discharged Doby.  Under Oregon

law, a wrongful discharge claim is an "interstitial tort, designed to fill a remedial gap where a

discharge in violation of public policy would otherwise not be adequately remedied."  *Dunwoody*

*v. Handskill Corp.*, 185 Or App 605, 613, 60 P3d 1135, 1139 (2003).  Wrongful discharge claims

can be brought only when the discharge is:  (1) for exercising a job-related right that reflects an

important public policy; or (2) in response to an employee fulfilling some important public duty.

*Lamson v. Crater Lake Motors, Inc.*, 216 Or App 366, 375, 173 P3d 1242, 1247 (2007) *aff'd*,

346 Or 628, 216 P3d 852 (2009).  However, the additional remedy of wrongful discharge will

not be accorded where a statutory remedy is "adequate to protect both the interests of society . . .

and the interests of employees," *Brown v. Transcon Lines*, 588 P2d 1087, 1095 (1978), and is

intended by the legislature "to abrogate or supersede any common law remedy for damages." *Holien v. Sears, Roebuck and Co.*, 689 P2d 1292, 1300 (1984). "[U]nder Oregon law, an adequate existing federal remedy may bar a common law wrongful discharge claim." *Draper v. Astoria Sch. Dist. No.* 1C, 995 F Supp 1122, 1131 (D Or 1998), overruled in part on other grounds, *Rabkin v. Or. Health Sciences Univ.*, 350 F3d 967 (9th Cir 2003) (citation omitted).

Doby argues that her wrongful discharge claim is not based on the same conduct which supports her statutory claims. Instead, she contends that it is based on the following two additional categories of conduct: (1) reporting alleged mistreatment of disabled students and the absence of services for these children; and (2) opposing what she believed were violations of OFLA and FMLA.

As to the first category of reporting perceived misconduct concerning students, Doby's wrongful discharge claim is fully subsumed by her statutory claims. Her discrimination and whistleblowing claims for violating ORS 659A.030 and .199 incorporate all prior allegations (First Amended Complaint, ¶¶ 103, 114), including allegations related to her reporting the mistreatment of children. *Id*, ¶¶ 19-24, 43(a)-(b), 151(d)-(f), 57, 71.

The evidence also belies Doby's argument. First, she references her reports to Weber about a child being locked out on the playground in the rain without a coat. Doby Depo., p. 225. Whether or not this child was disabled, the statutory claims would certainly cover her reporting the school's mistreatment and neglect of its students.

Second, she reported to Weber in March 2012 an illegal evaluation of a child whom the school suspected of having a disability. Weber Decl., Ex. 15 ("there are qualifications one must meet to be legally able to make an official evaluation or assessment. I'd be very surprised if either of those [evaluators] have those qualifications."). Around the same time, Doby reported to Weber that Roussel had refused to tell parents that their son was exhibiting signs of autism.

Doby Depo., pp. 243-44.  Doby argues that instead of reporting a possible violation of the law, she was simply advocating for these children.  Regardless of Doby's motivation, her reports to Weber were akin reporting potential violations of the law concerning disabled students.  As held by this court, the statutory remedies in ORS 659A.885 for a violation of ORS 659A.030 and .199 are generally deemed adequate to protect employment-related rights for discrimination and retaliation.  *See Shaw v. R.U. One Corp.*, 822 F Supp2d 1094, 1098 (D Or 2011).  Thus, if successful, Doby's whistleblowing claims would remedy any retaliation for reporting the illegal evaluation and Roussel's refusal to identify a potentially disabled student.

The second category, opposing perceived violations of OFLA and FMLA, concerns the same conduct as alleged in the OFLA and FMLA claims  Doby has no job-related right in this context outside the provisions of the OFLA and FMLA.  However, this court has held that the statutory remedies under FMLA and OFLA are not sufficiently adequate to preempt a wrongful discharge claim because they do not allow an award of "general or non-economic damages for emotional distress, in which a jury attempts to place a monetary value upon intangibles such as the plaintiff's pain, suffering, humiliation, aggravation, or loss or [*sic*] dignity."  *Pacosa v. Kaiser Found. Health Plan of the Nw.*, No. 09-CV-1137-BR, 2011 WL 208205, at *14 (D Or Jan. 21, 2011) (internal quotation omitted).  In addition, neither statue allows for the recovery of punitive damages.  ORS 659A.885; 29 USC § 2617(a)(1).

Even though OFLA and FMLA may not be adequate statutory remedies, based on the undisputed facts, Doby cannot prevail on her wrongful discharge claim.  As discussed above, a claim based on Doby opposing defendants' perceived violations of the OFLA/FMLA fails for lack of evidence as to causation.  As a result, she was not wrongfully discharged for engaging in any important public duty based on her OFLA/FMLA activity.

Thus, defendants are entitled to summary judgment against the wrongful discharge claim.

## **ORDER**

Defendants' Motion for Summary Judgment (docket #57) is GRANTED as to the Fifth and Sixth Claims for Relief (OFLA and FMLA Retaliation), the portions of the First and Second Claims (Discrimination based on Disability) alleging a failure to make reasonable accommodations, and the Seventh Claim (Wrongful Discharge); and otherwise DENIED.

DATED August 11, 2014.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge