UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DORA DOBY,

           Plaintiff,

     v.

SISTERS OF ST. MARY OF OREGON
MINISTRIES CORPORATION, a domestic
non-profit corporation; SISTERS OF ST.
MARY OF OREGON LITTLE FLOWER
DEVELOPMENT CENTER, a domestic non-
profit corporation, *abn* VALLEY CATHOLIC
EARLY LEARNING SCHOOL, *abn* VALLEY
CATHOLIC SCHOOL, and *abn* LITTLE
FLOWER DEVELOPMENT CENTER,

           Defendants.

Case No. 3:13-cv-00977-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

In her First Amended Complaint, plaintiff, Dora Doby ("Doby"), alleged eight claims

against defendants arising out of her termination of employment:  (1) two federal claims under the

Americans with Disability Act, 42 USC § 12112  ("ADA") (First Claim), and the Family Medical

Leave Act, 29 USC § 2615(a)(2) ("FMLA") (Sixth Claim); (2) four claims for violation of state

discrimination laws under ORS 659A.030(f), 659A.112, 659A.183, and 659A.199 (Second, Third,

Fourth, and Fifth Claims); and (3) two common law claims for intentional infliction of emotional

1 – OPINION AND ORDER

distress ("IIED") and wrongful discharge (Seventh and Eighth Claims).  Doby withdrew her IIED

claim (Eighth Claim) and part of her discrimination claims (First and Second Claims) premised on

being "regarded as" having a disability (docket #86).  All remaining claims derive from alleged

discrimination and retaliation based on Doby's disability of Obsessive Compulsive Disorder

("OCD") and her activities as a whistleblower, including interference with her use of approved

FMLA leave and eventual termination.

Before trial, the court granted summary judgment to defendants on Doby's claims for

violations of the ADA and ORS 659A.122 based on failing to provide reasonable

accommodations (portions of the First and Second Claims), for violations of the OFLA and

FMLA (Fifth and Sixth Claims), and for wrongful discharge (Seventh Claim) (dockets #81 &

#86).

On September 29, 2014, after a four-day trial, the jury returned a verdict in Doby's favor

on two of her remaining four claims alleging disability discrimination under ADA and ORS

659A.112 in the sum of $50,882 for economic damages, $200,000 for non-economic damages,

and $200,000 in punitive damages.  The jury also returned a verdict in defendants' favor on

Doby's other two claims for retaliation for reporting unlawful employment practices in violation

of ORS 659A.030(f) and for whistleblower retaliation in violation of ORS 659A.199.  On

May 21, 2015, a judgment was entered in Doby's favor in the sum of $450,882 (docket #187).

As the prevailing party on the disability discrimination claims, Doby now seeks to

recover $409,175.00 in attorney fees and $53,352.28 in costs, for a total of $462,527.28.

Defendants contend that the total amount should be reduced to $356,969.88 to account for

Doby's unsuccessful claims, duplicative and excessive charges, unnecessary expert testimony,

and unreasonable and unsubstantiated charges.  For the reasons set forth below, Doby is awarded

attorney fees in the reduced sum of $351,610 and costs in the sum of $49,126.88.

## I.    Reasonable Attorney Fees

Attorney fees for the prevailing party in fee-shifting claims are calculated using the lodestar figure which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Miller v. Los Angeles Cnty. Bd. of Educ.*, 827 F2d 617, 621 (9th Cir 1987) (internal quotation marks and citation omitted).  There is a strong presumption that the lodestar amount is reasonable.  *Jordan v. Multnomah Cnty.*, 815 F2d 1258, 1262 (9th Cir 1987). In calculating the lodestar, the court must consider those factors identified in *Kerr v. Screen Extras Guild, Inc.*, 526 F2d 67 (9th Cir 1975), which have now been subsumed within the initial calculation.  *Cunningham v. Cnty. of Los Angeles,* 879 F2d 481, 487 (9th Cir 1988).  Subsumed factors include:  (1) novelty and complexity of the issues; (2) special skill and experience of counsel; (3) quality of the representation; (4) the results obtained; and (5) the superior performance of counsel.  After calculating the lodestar, the fee may be adjusted by any nonsubsumed factors identified in *Kerr*.

Doby seeks to recover attorney fees for a total of 1,721.30 hours incurred by her legal team, consisting of four attorneys, one law clerk and one paralegal, from May 4, 2012, through November 25, 2014.  The lead attorney, Charese Rohny, who has been engaged in civil litigation for approximately 20 years, incurred nearly half of the total hours.  She seeks reimbursement at $325 per hour for 162.4 hours in 2012 and 2013 and $350 per hour for 634.0 hours in 2014.  Sara Staggs, an associate who earned her JD in 2006, incurred 122.5 hours at $200 per hour.  At a rate of $175 per hour, Vanessa Padgalskas, an associate who earned her JD in 2013, incurred 239.7 hours, while Jeremy Wolf, an associate who earned his JD in 2010, incurred 9.0 hours.  Amy Bruning, a law clerk who earned her JD in 2010, incurred 545.9 hours, or about one-third of the

total hours, at $125 per hour.  Finally, Molly Schaffer, a paralegal, incurred 7.7 hours at $75 per hour.

Defendants do not contest the hourly rates sought by Doby's legal team, but object to the number of hours incurred for various reasons, each of which is discussed below.

## II.    Defendants' Objections

### A.    Unsuccessful Claims

First, defendants seek a reduction of $28,887.50 based on the number of hours spent on litigating the unsuccessful claims.  Where a plaintiff succeeds on only some of her claims, the court must follow a two-part analysis:

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims.  If unrelated, the final fee award may not include time expended on the unsuccessful claims.  If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive.  Such decisions are within the district court's discretion.

*Thorne v. City of El Segundo*, 802 F2d 1131, 1141 (9th Cir 1986), quoting *Hensley v. Eckerhart*, 461 US 424, 434-35 (1983).

In general, claims are closely related for fee-shifting purposes if they "involve a common core of facts or [are] based on related legal theories."  *Hensley*, 461 US at 435.  In contrast, claims are "unrelated" if they are "entirely distinct and separate from the course of conduct that gave rise to the injury upon which the relief granted is premised."  *Thorne*, 802 F2d at 1141 (quotations and citations omitted).  "Thus, the focus is to be on whether the unsuccessful and successful claims arose out of the same 'course of conduct.'  If they didn't, they are unrelated

under *Hensley*." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F3d 895, 902, 905 (9th Cir

1995) (fees apportioned between successful sex discrimination claims and unsuccessful claims

for violation of the Indian Preference Act, race discrimination, and nepotism).  A mathematical

formula may be used to reduce a fee award to account for limited success.  *Harris v. Marhoefer*,

24 F3d 16, 18-19 (9th Cir 1990) (affirming the district court's use of a flat 50% reduction to a

merits fees award based in part on "the number of claims prevailed upon versus the number of

claims dismissed or decided in defendant's favor.").

Doby's unsuccessful claims alleged unlawful retaliation under both state and federal law,

OFLA and FMLA violations, wrongful discharge and intentional infliction of emotional distress.

Even though all of these claims arose from Doby's employment relationship with defendants,

defendants argue that none of them is "closely related" to her successful state and federal

disability discrimination claims.

To prove her federal and state disability discrimination claims, Doby had to present

evidence that her OCD was a substantial factor in the decision to terminate her employment.

Although the court and defendants had difficulty pinning down Doby's precise legal theory,

Doby ended up arguing that defendants knew of her OCD, that she was required to attend the

fitness-for-duty examination because of her OCD, and that she was terminated because her OCD

prevented her from attending the examination.

In contrast, the factual allegations underlying the retaliation claims relate to Doby's

reports of unlawful activity and harassment by a co-worker.  Her OFLA and FMLA claims arise

out of defendants' alleged interference with her right to return to work after she was placed on

leave on May 4, 2012, by requiring her to undergo a fitness-for-duty psychological examination.

Her wrongful discharge claim was based on her voicing concern about services for disabled

children and opposing what she believed were violations of OFLA and FMLA.  She abandoned

her IIED claim at summary judgment after defendants clearly established its lack of factual and

legal merit.

These unsuccessful claims are based on entirely separate and distinct legal theories.

Nonetheless, Doby asserts that they all relate to the course of events leading up to her

termination and cannot easily be separated from the work done in successfully presenting her

disability discrimination claims.  In order to fully inform the jury of Doby's rights regarding her

OCD, she felt that it was necessary to present evidence and argument regarding defendants'

knowledge of her disability, accommodations offered, and her related family medical issues.

Although the jury decided that defendants had a legal right to require Doby to undergo a fitness-

for-duty examination, she argues that the issues surrounding that examination, including whether

she presented a direct threat, were intimately related to the overall issue of termination based on

disability.  Absent testimony and evidence on all of her claims, she questions whether the jury

would have reached a verdict that she was terminated based on her disability.

As is unfortunately true of so many employment discrimination cases, Doby alleged a

slew of claims based on different legal theories and facts in the hope that one of them would

prevail.  Some did not survive summary judgment, and others did not survive trial.  Even though

all of the unsuccessful claims shared the goal of proving that Doby's termination was unlawful,

they implicate separate factual allegations regarding the conduct of both Doby and defendants

which are unrelated to the facts relied on by the jury to find that Doby's OCD was a substantial

factor in her termination.

That being said, in order to prevail, Doby had to present evidence of her OCD, its impact

on her work environment, her relationship to her superiors, her interactions with Human

Resources, and the circumstances of her termination.  To some extent, this evidence also relates

to the course of conduct underlying her other unsuccessful claims.  However, the unsuccessful

claims also required legal research and presentation of some evidence which is "entirely distinct

and separate from" the course of conduct alleged in her disability discrimination claims.

To support the requested reduction, defendants have submitted a chart which categorizes

various time entries by Doby's attorneys as follows:  5.5 hours for legal research and preparing

evidence and arguments for the whistleblowing claim ($1,750.00); 91.3 hours[1] for legal research

related to the fitness for duty/direct threat issues ($23,692.50); and 7.6 hours related to legal

research for the OFLA/FMLA claims ($770.00).[2]  Defendants do not seek to exclude time

incurred at trial to present evidence.  Thus, this court finds that the reduction requested by

defendants for Doby's unsuccessful and unrelated claims is reasonable.  Correcting for the

duplicate deduction of 3.7 hours ($1,295.00), the reduction totals $27,592.50.

## B.    Duplicative Charges

Defendants also seek a reduction of $7,125.00 for 37.8 hours of duplication of effort by

various attorneys to attend the same deposition or perform the same task on the same day.  A

prevailing party must "make a good faith effort to exclude from a fee request hours that are

excessive, redundant, or otherwise unnecessary." *Hensley*, 461 US at 434.  As this court has

explained, a "party is certainly free to hire and pay as many lawyers as it wishes, but cannot

expect to shift the cost of any redundancies to its opponent." *Pollard v. City of Portland*, No.

CV-01-114-ST,  2001 WL 34042624, at *5 (D Or Aug. 7, 2001).

> When attorneys hold a telephone or personal conference, good
> "billing judgment" mandates that only one attorney should bill the

---

[1]  Doby correctly notes that defendants' chart includes a duplication of 3.7 hours by Ms. Rohny on 9/7/14 (entry #522) that should be excluded, reducing defendant's subtotal of 95 hours to 91.3 hours and subtotal of $24,987.50 to $23,592.50.
[2]  Defendants incorrectly list the total as 208.6 hours.  Correcting for the duplication, the total should be 104.4 hours.

7 – OPINION AND ORDER

> conference to the client, not both attorneys.  The same good
> "billing judgment" requires attorneys not to bill for more than two
> to review pleadings or to attend oral argument.

*National Warranty Ins. Co. v. Greenfield*, No. CV-97-1654-ST, 2001 WL 34045734, at *5 (D Or

Feb. 8, 2001).

Doby responds that many entries are not duplicative and provides reasonable

explanations for several (entries 167/168, 253/254, and 474/476).  Scrutiny of the remaining

entries, however, reveals some duplicative charges.  These include entries 249/253/254 totaling

10.2 hours to prepare the confidential mediation statement.  The reduction of 5.8 hours

($1,110.00) requested by defendants is reasonable.  Entries 308/309 for two attorneys to attend

Ms. Roussel's deposition and entries 544/545 for two attorneys to attend the pre-trial conference

are duplicative, requiring a reduction of $1,575.00 and $312.50 respectively.  However, the

remaining entries are not duplicative since it is not unreasonable for one senior attorney to

review and edit what another junior attorney has prepared, such as deposition questions, video

clips, and motions.  Therefore, this court excludes a total of $2,997.50 as duplicative charges.

C.    **Excessive Charges**

Defendants seek a further reduction of other charges as excessive.  In particular,

defendants note that Doby's attorney billed 35.8 hours related to her BOLI complaint, but later

billed 63.8 hours to prepare and file her complaint in this court.  Accordingly, defendants request

a reduction of $6,500, representing 20 hours by Ms. Rohny.

Doby responds that all of the time to first exhaust her administrative remedy before

BOLI/EEOC also furthered the work required to litigate her claims in this court.  Although true,

defendants do not seek a reduction of those hours.  Instead, the issue is the time incurred to

prepare and file the complaint in this court.  According to Doby, that time is reasonable since

Doby's disability required more time than other clients, the complaint was more complex than

most, and preparing a BOLI complaint is different than preparing a federal court complaint. This court is not persuaded by that explanation. Given the 35.8 hours spent by Doby's attorneys handling the BOLI/EEOC charge, it should not have taken another 63.8 hours to draft and file the complaint in this court. Based on this court's review of the time entries, those hours are clearly excessive. Therefore, defendants' requested reduction of $6,500 is reasonable.

Defendants also object to the time billed by both Ms. Rohny and Ms. Bruning during trial ranging from 16.2 to 17.2 hours per day and seek a reduction to 12 hours per attorney per day which totals $7,392.50. Although a 16-17 hour day is indeed a long working day, it is not unusual for attorneys during a jury trial. No reduction is compelled for that reason.

Lastly, defendants seek a reduction of 2.7 hours spent by Ms. Bruning communicating with "vendors regarding demonstrative exhibits and troubleshooting" on September 22, 2014 (entry 557). Doby points out that the demonstrative evidence used in the opening statements involved nearly a dozen boards for which Ms. Bruning had to work with vendors. Given the number of demonstrative exhibits, this time was not unreasonable.

Although not argued by defendants, this court is astounded by the total number of hours incurred by Doby's legal team to prosecute this case to a successful conclusion, especially with an experienced lead attorney charging $325-250 per hour. Although the cost of litigation for employment discrimination cases has risen dramatically over time, it is highly unusual, if not unparalleled, for this court to see an attorney fee request of over $400,000. To better determine the reasonableness of this request, it would be useful to know what positions were taken by the parties during the mediation which, if successful, would have avoided further attorney fees. It also would be useful, as a basis of comparison, how many hours were spent by defendants' attorneys to defend Doby's claims. Instead, this court is forced to rely heavily on defendants'

9 – OPINION AND ORDER

objections to various time entries by Doby's attorneys as excessive.  Accordingly, based on those objections, Doby's attorney fee request is reduced by $6,500 for excessive charges.

### D.   Unreasonable Charges

In addition, defendants seek a reduction for unreasonable charges consisting of $17,382.50 in fees and $3,018.40 in costs for preparing for and participating in a mock trial and $5,120 for clerical work performed by Doby's attorneys.

As for the mock trial, Doby asserts, without further explanation, that it was reasonable to more effectively prepare her case for trial.  Such expenses are not necessary in routine litigation, but may be awarded as reasonable costs incurred under the circumstances.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F2d 403, 407 (9th Cir 1990) ("We see no reason why these hours [spent on a moot court trial run, and on consultations regarding a jury project] cannot be included in a fee award as along as the number of hours spent was reasonable."), *and on appeal following remand*, 944 F2d 910 (9th Cir 1991) (unpublished) (affirming trial court's conclusion that a mock trial was unwarranted "for this kind or case"); *Lemus v. Timberland Apartments, LLC*, 876 F Supp2d 1169, 1180 (D Or 2012) (citation omitted) ("Courts refuse to draw a firm line concerning the reasonableness of attorney fees for mock trials, moot courts, and other trial preparation techniques, instead analyzing the reasonableness in the context of the particular cases.").  Some courts have declined to award mock trial costs as unreasonable.  *Cooke v. Town of Colo. City*, Nol. CV-10-08105-PCT-JAT, 2015 WL 1806751, at *5 (D Ariz April 21, 2015) (disallowing fees for a focus group and mock trial), *appeal filed*, No. 15-16030 (9th Cir May 21, 2015); *Beach v. Wal-Mart Stores, Inc.*, 958 F Supp2d 1165, 1173-74 (D Nev 2013) (noting that preparation of jury instructions and opening statements for both the mock trial and real trial was duplicative and that "[t]here is no reason to compensate for the same work twice."); *Denesha v.*

*Farmers Ins. Exchange*, 976 F Supp 1276, 1291 (WD Mo1997) (disallowing mock trial expenses on ground that the particular case did not warrant such preparation), *reversed in part on other grounds*, 161 F3d 491 (8th Cir 1998).

Doby's fee request for 86.8 hours spent by her attorneys August 14-28, 2014, in preparing for and conducting a one-day mock jury trial is unreasonable, considering the many hours spent during that same two weeks and afterwards to prepare for the actual three-day jury trial starting on September 23, 2014. Whatever work was done to prepare for a mock trial necessarily duplicated the work required to prepare for the jury trial or, if not duplicative, was clearly excessive. Based on this court's observations at trial, it is far from clear that the mock trial in any way improved Doby's presentation of the case to the jury by either eliminating weak claims, deleting unnecessary witnesses and exhibits, or narrowing the issues. Therefore, this court declines to award fees related to the mock trial in the sum of $17,382.50, as well as the mock jury fees of $3,018.40 included in the Bill of Costs.

Defendants also have identified charges of $5,120 for 34.7 hours incurred by Doby's attorneys for clerical work that should be excluded. "Costs associated with clerical tasks are typically considered overhead expenses reflected in an attorney's hourly billing rate, and are not properly reimbursable." *Salinas v. Beef Nw. Feeders, LLC,* No. CV-08-1514-PK, 2010 WL 1027529 , at *4 (D Or Mar. 1, 2010), citing *Missouri v. Jenkins*, 491 US 274, 288 n10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them . . . [the] dollar value [of a clerical task] is not enhanced just because a lawyer does it") (citation omitted).

Doby responds that analyzing deposition transcripts, preparing video clips, and preparing exhibit lists and documents for trial is not clerical work. However, only three of the charges

11 – OPINION AND ORDER

identified by defendants fall into those categories, namely entries 390 ($437.50), 469 ($350), 472 ($1,190) and 491 ($50).  The remaining identified charges clearly are clerical work, such as preparing and filing the civil cover sheet, summonses, pleadings, and notices of deposition, as well as preparing table of authorities and table of contents, organizing deposition transcripts and videos electronically and for trial.  Such charges should be included in overhead and not billed at a lawyer's hour rate.  Therefore, the attorney fee award is reduced by $3,092.50 for clerical work performed by attorneys.

### E.    Expert Opinions

As part of the Bill of Costs, Doby seeks $29,645 for expert witness fees.  Defendants seeks to reduce those costs to $5,976 as unnecessary or related to unsuccessful claims.

The ADA specifically authorizes an award of "litigation expenses," including expert witness fees, to the prevailing party.  42 USC § 12205; *Lovell v. Chandler,* 303 F3d 1039, 1058 (9th Cir 2002).  However, "[t]he discretion to award reimbursement for expert witness fees is not unlimited.  In order for the district court to allow such expenses, the court must find that the expert testimony submitted was "crucial or indispensable" to the litigation at hand."  *In re Media Vision Tech. Sec. Litig*., 913 F Supp 1362, 1366 (ND Cal 1995) (citations omitted).  District courts "should exercise their discretion 'sparingly,'" applying "careful scrutiny" in their decision to grant expert fees.  *United States v. City of Twin Falls, Id.*, 806 F2d 862, 878 (9th Cir 1986), citing *Farmer v. Arabian Am. Oil Co.*, 379 US 227, 235 (1964).

Doby retained three rebuttal experts:  Stephen M. Raffle, M.D., at a cost of $19,920; Roberta T. Ballard, Ph.D., at a cost of $8,625; and Elke Zuercher-White, Ph.D., ABPP, at a cost of $1,100.  Before trial, the scope of Dr. Zuercher-White's testimony was limited, and she never testified at trial.  Nonetheless, Doby argues that this expense was reasonable and prudent since

her attorneys consulted with Dr. Zuercher-White on the specifics of OCD for which she had

treated Doby on one occasion.  However, the standard is whether the expert testimony was

"crucial or indispensable" to the case.  Doby proffered Dr. Zuercher-White as an expert witness

to prove that she had OCD, but defendants did not dispute that Doby suffers from OCD, only

whether her OCD rendered her unfit to work.  Because Dr. Zuercher-White' testimony was not

crucial or indispensable, her charge of $1,100 is not recoverable.

Defendants argue that Drs. Raffle and Ballard provided overlapping testimony at trial

regarding their opinions that defendants had no basis to require Doby to undergo a fitness-for-

duty or direct threat examination.  Doby responds that these experts were necessitated as rebuttal

witnesses by defendants' direct threat defense.  Dr. Ballard expressed her disagreement with

certain opinions by defendants' expert witness, Kris Mohandie, Ph.D., ABPP, and Dr. Raffle

opined that Doby's non-attendance at the fitness-for-duty examination was not volitional.  Even

though their opinions were limited by the court and overlapped, they were both crucial and

indispensable to Doby's ultimate success.  Therefore, their costs are recoverable.

Defendants further seek to exclude 9.9 hours incurred by Doby's attorneys, for a total of

$2,407.50, to confer with both potential and retained expert witnesses.  Unlike expert witness

fees, this time is recoverable if reasonably incurred.  Even though some experts may not have

been retained or did not testify, this court has no basis to find that the time incurred by Doby's

attorneys to find and confer with expert witnesses was unreasonable.

### F.    Unsubstantiated Charges

Finally, defendants seek to exclude Ms. Bruning's 13.9 hours incurred on August 27,

2014, for "review of discovery and other client documents for inclusion as trial exhibits" (entry

491) as not sufficiently detailed.  This court agrees with Doby that some litigation tasks are time-

consuming, but not amenable to a detailed description.  It is not necessary for an attorney to describe each document reviewed or even count the number of documents reviewed.  Based on the number of exhibits offered at trial, the number of documents reviewed by Ms. Bruning to include as trial exhibits could not have been small.  Even though the number of hours incurred for this task seems high, especially in light of other entries referring to the review of discovery (entries 448, 451, 466, 478), it is sufficiently detailed to pass muster.

### G.    Adjustment

It is within the discretion of this court to adjust the lodestar figure either: (1) downward if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable, *Hensley*, 461 US at 435–36 (1983); or (2) upward in "rare" and "exceptional" cases, *Pennsylvania*, 478 US at 565.  The presumption, however, is that the lodestar figure represents a reasonable fee.  *See Miller v. Los Angeles County Bd. of Educ.*, 827 F2d 617, 621 (9th Cir1987).

Although Doby achieved success on only some of her claims, a downward adjustment is not imperative.  She nonetheless received a jury verdict awarding all of the damages she sought. This case presented complex issues, but such complexity does not warrant any upward adjustment of the lodestar figure, which already reflects the significant expenditure of time required to address such issues.  Thus, no adjustment of the lodestar figure is warranted. Accordingly, attorney fees are awarded in the lodestar amounts provided above of $409,175 less: (1) $27,592.50 for unrelated claims; (2) $2,997.50 for duplicative charges; (3) $6,500 for excessive charges; (4) $17,382.50 for mock trial; and (5) $3,092.50 for clerical tasks, for a reduced total award of $351,610.

///

///

14 – OPINION AND ORDER

## ORDER

For the reasons set forth above, Plaintiff's Motion for Attorney Fees and Costs (docket #188) is GRANTED in the sum $351,610 and the Bill of Costs (docket #191) is GRANTED in the sum of $49,126.88 ($53,255.28 less $1,110 for expert witness fees and $3,018.40 for mock jury fees).

DATED  August 14, 2015.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

15 – OPINION AND ORDER